## NOLL, ET AL. *v.* COMPTROLLER OF THE TREASURY

[No. 208, September Term, 1968.]

*Decided April 30, 1969.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and SINGLEY, JJ.

*Henry P. Weil,* with whom were *Shapiro & Weil* on the brief, for appellants.

*Jon F. Oster, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General* on the brief, for the appellee.

SINGLEY, J., delivered the opinion of the Court.

The appellants, Janet Noll and her associates, are the operators of a 12 story office building located at 7735 Old Georgetown Road, in Bethesda, Maryland, which has 110,000 square feet of rentable space. The other appellants, Oscar D. Nohowel and his associates, are the operators of Triangle Towers, a 260 unit apartment building, also located in Bethesda. Attached to the office building is an unattended 150 car garage. A 275 car garage is a part of Triangle Towers.

In 1966 the State License Bureau, relying on Maryland Code (1957, 1968 Repl. Vol.) Art. 56 § 160 required the office building to obtain a garage license at an annual cost of $350.00 and accounting from 1 January 1967, required Triangle Towers to obtain a similar license at a cost of $450.00. Claims for refund, filed for the office building and Triangle Towers, were denied by the License Bureau. The operators of the two properties appealed to the Maryland Tax Court, as permitted by Code (1957, 1965 Repl. Vol.) Art. 81 § 217, where the denial of the refund was affirmed. They then appealed to the Circuit Court for Montgomery County, where the two cases were consolidated for trial. From a circuit court order denying them relief, this appeal was taken.

Code, Art. 56 § 160, under which the License Bureau acted, provides in part:

> "(a) *Schedule of fees.*—No person, firm, company or corporation, resident or nonresident in this State shall keep a garage for the hire, storage or sale of automobiles until they shall first have obtained a license

therefor, and shall pay an annual license fee based upon the square foot area of each floor for each garage, viz.:

Garage containing not more than 2,000 square feet ................................ $ 20.00
Those containing more than 2,000 square feet, and not more than 3,000 square feet ..... 40.00
Those containing more than 3,000 square feet, and not more than 5,000 square feet ...... 75.00
Those containing more than 5,000 square feet, and not more than 7,500 square feet ...... 125.00
Those containing more than 7,500 square feet, and not more than 10,000 square feet .... 200.00
For every additional 5,000 square feet or fractional part thereof the sum of $50.00 additional.

"(b) *'Garage' defined.*—A garage, as used within the terms of this section shall mean a place of storage for hire or a place where is kept for hire any automobile, locomobile, or any vehicle of any kind the motive power of which shall be electricity, steam, gas, gasoline or any other motive power except animals and aircraft, whether such automobile, locomobile or vehicle is kept therein permanently or temporarily, but whenever such garage has included within the building a machine shop, which machine shop is definitely defined by permanent partitions in the building, the space occupied by the same shall be exempted from taxation under this section."

As first enacted by Ch. 704 of the Laws of 1916, there was no exemption for that part of a garage which might be used as a machine shop. This exemption, contained in the last phrase of § 160 (b), was added by Ch. 294 of the Laws of 1920. Ch. 535 of the Laws of 1931 brought open air garages within the ambit of the licensing requirement and Ch. 467 of the Laws of 1941 removed them.[1] The licensing statute has been before us pre-

---

1. It is interesting to note that since 1941, Baltimore City has imposed a license fee on open air garages which are defined as "open

viously in *Montgomery County Motor Co. v. Maryland,* 147 Md. 232, 127 A. 637 (1925) where we held that an automobile salesroom was not a garage and was therefore not subject to the licensing requirement.

The thrust of the appellants' argument is that the statute, in defining a garage as "a place of storage for hire", means a *public* garage and not a facility essentially private in character, provided by the owners of an office or apartment building as a convenience for tenants, particularly if such a garage is merely collateral or incidental to the operation of the buildings. The argument might be persuasive despite dicta in *Montgomery County Motor Co.* which might be susceptible of a contrary interpretation, in instances where facilities for the parking of cars are provided entirely gratuitously for the convenience of customers, visitors or tenants, in the light of the § 160 (b) definition of a garage as "a place of storage for hire."

This argument, however, is not one which the appellants can effectively present in this case. There can be no doubt that the garage space at Triangle Towers is "* * * a place of storage for hire" since it is rented to tenants for $11.00 per month per space, and to outsiders for $15.00 per month per space. Nor do we feel that the office building should be treated differently. Although the building's garage space is not separately leased (and not even mentioned in the printed form of lease), there was testimony that it was customary to allot garage space at the time each lease was signed and that one space was usually allocated to a tenant for each 1,000 square feet of office space which he leased. There was further testimony that one tenant, who required 15 spaces, paid additional rent on that account, and that another tenant had the use of 200 spaces outside the building, which the owners had leased at a monthly rental of $2,300, because, according to the testimony of the manager of the office building, "* * * we are in a competitive situation where we have to offer, we have a building that is going begging and empty and a client comes along and says, well, I will take the space if you can get me 200 parking spaces." In response to a

air place[s] of storage for hire." 1 Balto. City Code (1966) Art. 15 § 56.

question by the tax court, the manager agreed that parking space had to be offered with office space if the building was to maintain its competitive position.

We concur in the lower court's view that

"* * * [W]hether there is a separate garage charge or whether it is computed directly into the monthly rent, the net result is still the same, * * * the landlord is renting two separate and distinct commodities, office space and parking space. That both are lumped together under one monthly rent makes the operation no less a 'garage for hire' than if there were a separate charge for each facility."

*Order affirmed; costs to be paid by appellants.*